IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| WADE A. EICHHORN and | * | Chapter 13 |
| JENNIFER L. EICHHORN, | * | |
| Debtors | * | Case No.: 1-05-bk-03045 |
| | * | |
| | * | |

## MEMORANDUM OPINION

On July 21, 2006, Debtor's Counsel, Purcell, Krug & Haller, ("Counsel") filed its First Interim Application for Allowance of Compensation for Professional Services and Reimbursement of Expenses for the Period March 5, 2005 through June 30, 2006 ("Application"). Ivan J. Zook & Sons, Inc., Robert Zook and James Zook (collectively the "Zooks"), unsecured creditors, filed a "limited" objection to the Application. In the objection, the Zooks state that they do not object to the amount of the fees claimed or reimbursement sought, however, they oppose payment of these fees and expenses from Debtors' real estate or the use of the real estate to secure the payment of Counsel's fees and expenses.[1]

Facts and Procedural History

Prior to commencement of the case, Counsel obtained a flat fee for filing the petition and for customary services provided in chapter 13 cases.[2] In support of the Application, Counsel

---

[1] In an Opinion filed September 18, 2006, the Court sustained the Zooks' objection to Debtors' chapter 13 plan. This Memorandum Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter is core pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

[2] Counsel's fee summary submitted with the Application states that the fees requested are for the period March 5, 2005 through June 30, 2006 and that a retainer of $2,500.00 was received. The Application itself also states that the retainer amount was $2,500.00. However, the disclosure required under FBRP 2016 and the billing summary attached to the Application state that Counsel received $3,000.00 as a retainer.

submitted five invoices for the period June 23, 2005 through June 30, 2006 that included fees totaling $22,909.75 for services rendered and unreimbursed expenses of $424.68.[3] Counsel acknowledged receiving a retainer as compensation for services provided prior to June 2005. All services for which Counsel is seeking additional compensation relate to the Zooks' motion to dismiss Debtors' case, their objection to Debtors' plan, and extensive discovery and numerous pleadings filed addressing these two issues.

## Discussion

In determining reasonable compensation, the Court must consider the nature, extent and value of the services taking into account:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time in which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
> (E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)–(E). Although in other chapters the services of debtor's counsel are not compensable unless they benefit the estate, in a chapter 13 case compensation may be awarded to debtor's counsel for services that are beneficial to the debtor and are necessary to defend the debtor's interests. 11 U.S.C. § 330 (a)(4)(B).

---

[3]The invoices submitted in support of the Application do not agree with the amounts set forth in the Summary. According to the Summary, the fees requested are $25,549.75. I assume that the retainer is included in this amount. Nevertheless, the amount requested for services as stated in the invoices do not total $25,549.75 whether the retainer is $2,500.00 or $3,000.00. The Summary requests reimbursement of costs in the amount of $618.68 but the amounts included in the invoices submitted in support of the application total $424.68.

2

Fees awarded to professionals under § 330 are categorized as administrative expenses under § 330(a)(4)(B) and § 503(b)(2) and are entitled to priority under § 507(a)(1). *See In re Hallmark*, 225 B.R. 192, 194 (Bankr. C.D. Cal. 1998); 2 Lundin, *Chapter 13 Bankruptcy* § 100.4 (3rd. ed. 2000). Administrative expenses under § 507(a)(1) are treated as priority claims, which must be paid in full under § 1322(a)(2). When a priority payment is made in deferred payments over the course of a plan, they must be paid "before or at the time of each payment to creditors under the plan." 11 U.S.C. § 1326. Section 1326 does not mandate that all administrative expenses under § 507(a)(1) be paid before payments are made to other creditors, but it does require that these expenses "be paid *concurrently with* or *in advance of* payments to other creditors and not *behind* those payments." *In re Randolph*, 2001 WL 122139 (Bankr. N.D. Ind. 2001) (emphasis in original) (citing cases). Debtors' first chapter 13 plan was not confirmed because it was not proposed in good faith. One of the bases for the finding that Debtors lacked good faith was Debtors' failure to accurately report nonexempt equity in real estate. Any amended plan proposed by Debtors will have to include the value of the nonexempt equity as part of the payments into the plan. As required by § 1326, administrative claims, including attorneys' fees and expenses, paid through the plan must be paid either in advance of or concurrently with payments to other creditors. I may not require an administrative claimant to subordinate the claim to a lower priority class based upon the plan funding source. Accordingly, the Zooks' objection to the use of the equity in Debtors' real estate to pay counsel fees in connection with distributions under the plan must be denied.

Although the Zooks have not objected to the reasonableness or necessity of the services for which Counsel is seeking compensation, a bankruptcy court has an independent duty to

3

review any fee application, even in the absence of an objection from an interested party. *In re Busy Beaver Building Centers, Inc.,* 19 F.3d 833, 841 (3rd Cir. 1994). "Broad discretion is vested in the court to conduct such review." *In re Evans,* 281 B.R. 552, 554 (Bankr. M.D. Pa. 2001) (citing *In re Lan Assocs., XI, L.P.,* 192 F.3d 109, 122-123 (3d Cir. 1999)). However, in setting an attorney's fee, the Court of Appeals for the Third Circuit has suggested that a bankruptcy court should not become "enmeshed in a meticulous analysis of every detailed facet of the professional representation." *Busy Beaver.* 19 F.3d at 844-45 (citing *Lindy Bros. Builders, Inc. v. American Radiator & Std. Sanitary Corp.,* 540 F.2d 102, 116 (3d Cir. 1976)). A court's "overriding obligation" when examining a professional's fee application is to "'protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors.'" *Id. See also In re Truong*, 259 B.R. 264, 267 (Bankr. D. N.J. 2001) ("bottom line consideration" should be whether fee is fair; both to professional whose fee is sought, as well as to debtor and creditors).

In furtherance of its responsibilities to examine Counsel's application, the Court has attempted to heed the Court of Appeals admonition to "correct reasonably discernible abuses." One of the first issues I must consider is whether Counsel should be compensated for services related to the preparation of schedule "A" and the documentation to support the assertion that Jennifer Eichhorn ("Ms. Eichhorn") held a life estate in real estate located in Yeagertown, Pennsylvania (the "Yeagertown property"). If Debtors had been more forthcoming about Ms. Eichhorn's fee simple interest in the Yeagertown property, the time spent attempting to justify the interest as a "life estate" could have been avoided. It is impossible to quantify with precision which tasks would not have been necessary if full disclosure had been made in Debtors' original

4

schedules. At a minimum, however, the Zooks would not have been required to depose the appraiser who prepared the valuation of the non-existent life estate. Further, if the fee simple interest had been fully disclosed, it would have been apparent to the chapter 13 trustee that Debtors had nonexempt equity in real estate that would have to be devoted to the plan in order to satisfy the "best interests of creditors" test under § 1325(a)(4). Therefore, I find that Counsel's time spent attending the appraiser's deposition were not reasonable and necessary. There also were services rendered in June 2005 related to the lien search and to "time spent addressing parents' concerns." These services, which were included in the August 1 and August 31, 2005 invoices, were beneficial neither to the estate or to debtors. After disallowing fees of $1102.00, Counsel's fees are approved in an amount of $21,803.75 for services rendered beyond those contemplated by the payment of the flat fee. The reimbursement of expenses in the amount of $424.68 also is approved.

Having determined the allowable amount of compensation and expenses, I must consider whether these amounts should be paid first or according to an alternative schedule of distribution. Counsel failed to make an adequate investigation of the Debtors' assets when he knew or should have known that the life estate in the Yeagertown property granted to Ms. Eichhorn was not valid unless recorded. Therefore, it would be inequitable to permit his administrative claim to be paid in full before the Zooks and other creditors of the estate begin to receive payments.[4] Therefore, Counsel will to be required to obtain payment of these approved

---

[4] The Court does not hold that in every instance in which the schedule of a debtor's assets is incorrect or incomplete that counsel fees will be ineligible for payment as a "first tier" distribution. Because Counsel in the within case is seeking approval of significant fees that were incurred as a direct result of inaccurate and misleading information on schedule "A," the Court finds it appropriate to allow affected creditors to receive partial payment of their claims at the

fees and costs from the trustee *pari passu* with unsecured creditors, excluding the fees previously paid to Counsel that served as a retainer. Further, Counsel's approved fees may not be secured by property that was property of the estate when the petition was filed. An appropriate order will be entered.

BY THE COURT,

Mary D. France
Bankruptcy Judge

Date: September 27, 2006

*This document is electronically signed and filed on the same date.*

---

same time Counsel's fees are paid.